# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EILENE JO MOSES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. CIV-08-289-FHS-SPS |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Eilene Jo Moses requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on October 6, 1984, and was twenty-three years old at the time of her administrative hearing. She has a sixth grade education (including special learning disability classes and alternative school) and then attended GED courses through the ninth grade level. She dropped out of formal schooling at the age of fourteen due to pregnancy and has prior work activity. The claimant alleges that she has been unable to work since October 6, 1984, because of borderline intellectual functioning and depression.

## Procedural History

The claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 7, 2005. Her application was denied. ALJ Ralph J. Wampler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 28, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work limited to "some simple and some complex tasks on a routine basis." He also found that the claimant could "interact with others on a superficial level and can adapt to simple and some complex work situations." (Tr. 12). The ALJ concluded that although the claimant had no past relevant work to which she could return, she was not disabled because there

was work existing in significant numbers in the national economy that she could perform, *e. g.*, laundry patching machine operator and tumbler attender (Tr. 14).

**Review**

The claimant contends that the ALJ erred by failing to find her disabled at step three, *i. e.*, that the claimant met the requirements of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. The claimant argues in particular that the ALJ should have found that her learning disability along with her valid verbal IQ score of 68 met the requirements of 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C ("Listing 12.05C"). The undersigned Magistrate Judge finds that the ALJ did fail to give proper consideration to the claimant's learning disability, and the decision of the Commissioner should therefore be reversed.

At step three of the sequential evaluation, the ALJ must determine if the claimant has an impairment that meets (or is medically equivalent to) one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. *See Clifton,* 79 F.3d at 1009-10. The claimant has the burden of proof at step three, *i. e.*, while she is not required to identify a particular listing, the claimant must present evidence showing that her impairment meets one of the listings. *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 733 n.2 (10th Cir. 2005) ("This is not to say a claimant has the burden at step three of actually identifying any relevant listing. In Clifton, we appeared to place the burden on the ALJ to identify any relevant listing(s) in light of the evidence which a claimant has produced."), *citing Clifton,* 79 F.3d at 1009. If the ALJ finds that the claimant's impairment does meet a listing, no further analysis is necessary because the Commissioner regards listed impairments as per

se disabling. *See* 20 C.F.R. §§ 404.1525(a) ("The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."). Otherwise, the ALJ must "discuss the evidence and explain why [the claimant is] not disabled at step three." *Clifton,* 79 F.3d at 1009, *citing Cook v. Heckler,* 783 F.2d 1168, 1172-73 (4th Cir. 1986).

In analyzing the claimant's mental impairment at step three, the ALJ considered, whether she met Listing 12.05C, which states that disability is established where the claimant demonstrates "[a] valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional significant work-related limitation of function." There is no dispute that the claimant demonstrated an IQ score within the appropriate range with her verbal IQ score of 68. The claimant thus needed to show only that she had "a physical or other mental impairment imposing additional significant work-related limitation of function" to be declared disabled at step three.

Unfortunately, the ALJ determined that the claimant did not have "a physical or other mental impairment imposing additional significant work-related limitation of function." He considered whether the claimant had a physical impairment that qualified under Listing 12.05C and concluded that she did not, noting that "[m]edical evidence of record shows the claimant is physically in good health. There is no other impairment imposing significant limitation of function." (Tr. 11). The ALJ also considered whether the claimant had another mental impairment that qualified under Listing 12.05C but determined that her depression was insufficient, *i. e.*, the ALJ found that "there is no

medical evidence of record showing a diagnosis of depression and no indication such diagnosis would cause any more than minimal limitation in the ability to do basic work; nor that it would satisfy the durational requirement." (Tr. 10). The ALJ did not, however, consider whether the claimant had a learning disability that would qualify as the "other mental impairment" under Listing 12.05C.

There was evidence in the record reflecting that the claimant *did have* a learning disability: (i) a February 9, 2006, psychological report from Dr. Sidney Pepper, Ph.D. stating that the claimant's "Bender-Gestalt reproductions were consistent with a learning disability" (Tr. 140); (ii) a Psychiatric Review Technique Form dated February 17, 2006 by Dr. Sally Varghese, M.D. (on whose opinions the ALJ relied at least in part) showing a checked box for a "medically determinable impairment" identified as "LD" disorder[2] (Tr. 148) and also indicating that the claimant had marked limitations in maintaining concentration, persistence, or pace (Tr. 157); and (iii) the claimant's own testimony at the administrative hearing that she took special education classes while in school (Tr. 184).

The Commissioner offers creditable arguments that evidence of record would support a finding by the ALJ that the claimant did not suffer from a sufficient learning

---

[2] If there is has any doubt that "LD" refers to a learning disability, the ALJ should re-contact Dr. Varghese to clarify. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e) ("We will seek additional evidence or clarification from your medical source *when the report from your medical source contains a conflict or ambiguity that must be resolved*, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.") [emphasis added]. *See also Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir. 2003) ("The ALJ must ensure that a sufficient record exists to evaluate [the claimant's] exertional and nonexertional limitations. . . [T]he ALJ's duty to develop the record may include obtaining additional medical evidence from [the claimant's] treating physicians or ordering consultative examination if the record does not otherwise contain sufficient evidence upon which to base an RFC finding[.]") [citations omitted].

disability sufficient to satisfy the requirements of Listing 12.05C. But this Court cannot provide factual findings for the decision that the ALJ did not himself make. *See, e. g., Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2000) ("Although we review the ALJ's decision for substantial evidence, 'we are not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). *See also Haga v. Astrue,* 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."), *citing Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir. 2004)("Affirming this *post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). The ALJ will simply have to address this question himself on remand.

Because the ALJ failed to consider whether the claimant had a learning disability sufficient to qualify as the "other mental impairment" under the requirements of Listing 12.05C, the undersigned Magistrate Judge concludes that the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis at step three.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further

proceedings consistent herewith. The parties shall have fourteen days to file objections to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(1)

DATED this 16th day of March, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**